**ORAL ARGUMENT NOT YET SCHEDULED**

No. 12-5228

_____

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

KEITH THOMAS,
*Appellant-Plaintiff*

v.

ERIC H. HOLDER, JR., *et al.*,
*Appellees-Defendants*

_____

On Appeal from the United States District Court
for the District of Columbia (Unassigned)

_____

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE*
ON BEHALF OF APPELLANT**

Anthony F. Shelley
    *Counsel of Record*
Sat Nam S. Khalsa
Miller & Chevalier Chartered
655 Fifteenth St. NW, Suite 900
Washington, DC  20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

August 5, 2013                              *Court-Appointed Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## LIST OF PARTIES AND *AMICUS CURIAE*

Appellant Keith Thomas is a prisoner incarcerated in the California state prison system.  Appellees are Eric H. Holder, Jr., Attorney General of the United States, and Anthony Hedgneth, Warden, Salinas Valley State Prison.  The *amicus curiae* in support of Appellant is court-appointed counsel, Anthony F. Shelley of Miller & Chevalier Chartered.

## RULINGS UNDER REVIEW

Appellant ultimately seeks appellate review of orders of the District Court of the District of Columbia dismissing Appellant's petition for a writ of mandamus and denying reconsideration of that dismissal.  *Amicus*'s Appendix ["Amicus App."] at AA54, AA57.  After Appellant failed to respond to a show cause order from this Court requiring him to state why he should not be required to pay the full appellate filing fee, his appeal was dismissed for lack of prosecution.  Amicus App. AA104.  Seeking to reinstate the case, Appellant filed a motion for reconsideration (Amicus App. AA109-20, AA121-25), which the Court referred to a merits panel.  Amicus App. AA129-30.  In its referral order, the Court directed the parties to address in their briefs whether the "three-strikes provision" of the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), unconstitutionally denies indigent prisoners access to the courts.  Amicus App. AA129.

## **RELATED CASES**

The *amicus* is not aware of any cases in this Circuit or elsewhere in which

Appellant has sought the same mandamus relief.

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE AS TO PARTIES, RULINGS, AND
RELATED CASES ................................................................................C-1

LIST OF PARTIES AND *AMICUS CURIAE* ....................................C-1

RULINGS UNDER REVIEW ..............................................................C-1

RELATED CASES ................................................................................C-2

INTEREST OF THE *AMICUS CURIAE* ..............................................1

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

RELEVANT STATUTES .......................................................................3

STATEMENT OF THE CASE ................................................................3

STATEMENT OF FACTS ......................................................................7

SUMMARY OF ARGUMENT ...............................................................8

STANDARD OF REVIEW ...................................................................10

ARGUMENT .........................................................................................11

I.      APPELLANT SHOULD BE ALLOWED TO PROCEED *IN
        FORMA PAUPERIS* UNDER THE PLRA BECAUSE HE IS UNDER
        IMMINENT DANGER OF SERIOUS PHYSICAL INJURY ...................11

II.     IN THE ALTERNATIVE, § 1915(g) OF THE PLRA
        IS UNCONSTITUTIONAL .........................................................14

        A.      Section 1915(g) Denies Indigent Prisoners Access
                to the Courts and Violates Equal Protection .........................16

1.   Section 1915(g) Fails Strict Scrutiny ............................................17

a.   Strict Scrutiny Applies Because § 1915(g)
Burdens Indigent Prisoners' Access to the Courts ................17

b.   Section 1915(g) Fails Strict Scrutiny
Because It Is Not Narrowly Tailored ......................................25

2.   Section 1915(g) Also Fails Intermediate Scrutiny ........................34

a.   If Not Applying Strict Scrutiny, This Court
Should Apply Intermediate Scrutiny ......................................34

b.   Section 1915(g) Fails Intermediate Scrutiny
Because It Is Not Substantially Related to the
Purpose the Statute Is Intended to Serve ................................36

3.   Section 1915(g) Likewise Fails Rational
Basis Review ..........................................................................38

B.   Section 1915(g) Violates the Due Process
Clause of the Fifth Amendment ............................................................41

CONCLUSION ............................................................................................47

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .................................*Post*

CERTIFICATE OF SERVICE ..........................................................................*Post*

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Abdul-Akbar v. McKelvie,*
    239 F.3d 307 (3d Cir. 2001) ............... 14-15, 19-22, 24-25, 28-29, 31, 33, 35, 44

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................29

*Ashley v. Dilworth,*
    147 F.3d 715 (8th Cir. 1998) ............................................................11

*Banos v. O'Guin,*
    144 F.3d 883 (5th Cir. 1998) .......................................................13, 24

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................29

*Boddie v. Connecticut,*
    401 U.S. 371 (1971)..............................................................24, 41, 43

*Bolling v. Sharpe,*
    347 U.S. 497 (1954)........................................................................17

*Bounds v. Smith,*
    430 U.S. 817 (1977)........................................................................18

*Carson v. Johnson,*
    112 F.3d 818 (5th Cir. 1997) ............................................................14

*Ciarpaglini v. Saini,*
    352 F.3d 328 (7th Cir. 2003) .....................................................12, 13, 14

*City of Richmond v. J.A. Croson Co.,*
    488 U.S. 469 (1989)........................................................................34

*Clark v. Jeter,*
    486 U.S. 456 (1988)........................................................................36

*Cleburne Living Ctr. v. Cleburne,*
    726 F.2d 191 (5th Cir. 1984) ............................................................34

*Craig v. Boren*,
429 U.S. 190 (1976)................................................................34

*Douglas v. California*,
372 U.S. 353 (1963)................................................................21

*Estelle* v. *Gamble*,
429 U.S. 97 (1976)................................................................43

*Fuller v. Myers*,
123 F. App'x 365 (10th Cir. 2005) ....................................12

*Gibbs v. Cross*,
160 F.3d 962 (3d Cir. 1998) ..............................................12

*In re Green*,
669 F.2d 779 (D.C. Cir. 1981)...........................45, 46, 47

*Griffin v. Illinois*,
351 U.S. 12 (1956)..............................21, 41, 42, 44

*Higgins v. Carpenter*,
258 F.3d 797 (8th Cir. 2001) .............................................14

*Hurt v. Social Security Admin.*,
544 F.3d 308 (D.C. Cir. 2008)...........................................47

*Hutchins v. District of Columbia*,
188 F.3d 531 (D.C. Cir. 1999).............................36, 37, 38

*Ibrahim v. District of Columbia*,
463 F.3d 3 (D.C. Cir. 1999)................................11, 12, 13

*In re Kissi*,
652 F.3d 39 (D.C. Cir. 2011).............................................11

*Kramer v. Union Free School Dist. No. 15*,
395 U.S. 621 (1969)................................................26, 27

*Lewis v. Casey*,
518 U.S. 343 (1996)................................................................18

*Lewis v. Sullivan*,
  279 F.3d 526 (7th Cir. 2002) .......................................................14, 24

*Lyon v. Vande Krol*,
  127 F.3d 763 (8th Cir. 1997) ................................................14, 15, 25

*\*M.L.B. v. S.L.J.*,
  519 U.S. 102 (1996)...............................................................42, 43, 45

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803) .......................................................19

*Martin v. Shelton*,
  319 F.3d 1048 (8th Cir. 2003) .......................................................13

*Mayer v. Chicago*,
  404 U.S. 189 (1971)........................................................................43

*McAlphin v. Toney*,
  281 F.3d 709 (8th Cir. 2002) .........................................................12

*Mills v. Habluetzel*,
  456 U.S. 91 (1982)..........................................................................34

*Mitchell v. Farcass*,
  112 F.3d 1483 (11th Cir. 1997) .............................................15, 29, 38

*Mitchell v. Fed. Bureau of Prisons*,
  587 F.3d 415 (D.C. Cir. 2009)........................................................11

*\*Neitzke v. Williams*,
  490 U.S. 319 (1989)...................................................................27, 28

*New Orleans v. Dukes*,
  427 U.S. 297 (1976)........................................................................17

*\*Plyler v. Doe*,
  457 U.S. 202 (1982)............................................................17, 18, 35, 36

*Ramos v. Town of Vernon*,
  353 F.3d 171 (2d Cir. 2003) .....................................................34, 36

*Rinaldi v. Yeager*,
　384 U.S. 305 (1966)............................................................................42

*Rivera v. Allin*,
　144 F.3d 719 (11th Cir. 1998) ..............................................15, 21, 24

*Rodriguez v. Cook*,
　169 F.3d 1176 (9th Cir. 1999) .........................................................15

*Roe v. Wade*,
　410 U.S. 113 (1973)....................................................................17, 18

*Roller v. Gunn*,
　107 F.3d 227 (4th Cir. 1997) ...........................................................24

*Romer v. Evans*,
　517 U.S. 620 (1996)..................................................................22, 38

*Tucker v. Branker*,
　142 F.3d 1294 (D.C. Cir. 1998).................................. 10, 22, 23, 24, 25, 26

*United States v. Windsor*,
　133 S. Ct. 2675 (2013)...........................................................17, 34, 35

*White v. Colorado*,
　157 F.3d 1226 (10th Cir. 1998) ......................................................15

*Wilson v. Yaklich*,
　148 F.3d 596 (6th Cir. 1998) ........................... 14, 19, 20, 21, 22, 24, 44

*Wygant v. Jackson Bd. of Educ.*,
　476 U.S. 267 (1986).......................................................................31

*Zablocki v. Redhail*,
　434 U.S. 374 (1978)....................................................................17, 18

### Statutes

Controlled Substances Act,
　21 U.S.C. §§ 801, *et seq*. ..............................................................12
　21 U.S.C. § 811..............................................................................4
　21 U.S.C. § 812..............................................................................4

28 U.S.C. § 1291 ............................................................................................2

28 U.S.C. § 1331 ..........................................................................................21

28 U.S.C. § 1361 .......................................................................................3, 20

28 U.S.C. § 1442 ..........................................................................................21

Prison Litigation Reform Act
    28 U.S.C. § 1915 .................... 1-4, 6, 8, 9-12, 14-19, 21-27, 29-34, 36-40, 44-46

28 U.S.C. § 1915A .......................................................................................32

42 U.S.C. § 1983 ...............................................................................19, 32, 44

42 U.S.C. § 1997e .......................................................................................32

Cal. Health & Safety Code § 11362.5 ................................................................8

### *Other Authorities*

*Universal Declaration of Human Rights*, G.A. Res. 217A(III), U.N. Doc. A/810
    (Dec. 10, 1948) ......................................................................................44

141 Cong. Rec. 14570 (1995) .........................................................................25

141 Cong. Rec. S7498-01, S7526 (daily ed. May 25, 1995) ................................26

141 Cong. Rec. S7524 (daily ed. May 25, 1995) ...............................................25

141 Cong. Rec. S7526 (daily ed. May 25, 1995) ...............................................25

141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) ............................................25

141 Cong. Rec. H14105 (daily ed. Dec. 6, 1995) ..............................................25

Robert G. Bone, *Plausibility Pleading Revisited and Revised: A Comment on
    Ashcroft v. Iqbal*, 85 Notre Dame L. Rev. 849 (2010) .....................................30

Joe S. Cecil, *et al.*, *Motions to Dismiss for Failure to State a Claim After Iqbal:
    Report to the Judicial Conference Advisory Committee on Civil Rules* (Mar.
    2011), http://www.fjc.gov/public/pdf.nsf/lookup/motioniqbal.pdf/$file/
    motioniqbal.pdf..........................................................................................39

Joshua D. Franklin, *Three Strikes and You're Out of Constitutional Rights? The Prison Litigation Reform Act's "Three Strikes" Provision and Its Effect on Indigents*, 71 U. Colo. L. Rev. 191 (2000) ..................................................15, 21

Lonny Hoffman, *Twombly and Iqbal's Measure: An Assessment of the Federal Judicial Center's Study of Motions to Dismiss*, 2012 Fed. Cts. L. Rev. 1 (2012) ........................................................................40

Randal S. Jeffrey, *Restricting Prisoners' Equal Access to the Federal Courts:  The Three Strikes Provision of the Prison Litigation Reform Act and Substantive Equal Protection*, 49 Buffalo L. Rev. 1099 (2001) ...........................................15

Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, But is it Constitutional?*, 70 Temp. L. Rev. 471 (1997) ........................................................................15

Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L. J. 1 (2010) ......................................29, 30

National Institutes of Health, *Osteoarthritis*, http://www.nlm.nih.gov/ medlineplus/osteoarthritis.html (last visited Aug. 4, 2013) ................................7

Julie M. Rewie, *The Least Among Us: Unconstitutional Changes in Prisoner Litigation Under the Prison Litigation Reform Act of 1995*, 47 Duke L.J. 117 (1997) ..................................................................................15

Simone Schonenberger, *Access Denied: The Prison Litigation Reform Act*, 86 Ky. L.J. 457 (1997) ..................................................................................15

Statistics Division, Administrative Office of the United States Courts, *Motions to Dismiss: Information on Collection of Data* (Apr. 27, 2010) ...........................40

Fed. R. App. P. 28 .............................................................................................1

Fed. R. Civ. P. 12 ........................................................ 27, 28, 29, 30, 38, 39, 40

*Authorities upon which we chiefly rely are marked with an asterisk.

## INTEREST OF THE *AMICUS CURIAE*

Counsel was appointed by the Court to file an *amicus* brief in support of

Appellant.  Because the *amicus* is Court-appointed, this *amicus* brief contains the

items required by Fed. R. App. P. 28(a) and the related Circuit Rule.  The *amicus*

has also filed in accordance with Fed. R. App. P. 28(f) and the related Circuit Rule

as those apply to an appellant's brief, an addendum comprising the relevant

portions of statutes and regulations.  For the Court's convenience, the *amicus*

additionally is submitting an Appendix containing items from the District Court's

and this Court's record.

## JURISDICTIONAL STATEMENT

The questions presented at this stage of the appeal ultimately concern

whether Appellant Keith Thomas should be permitted to proceed *in forma pauperis*

pursuant to the installment-payment terms of the Prison Litigation Reform Act

("PLRA"), 28 U.S.C. § 1915(b).  The Court has jurisdiction under the PLRA(*id.*

§ 1915(a)) and under its inherent authority to determine requests for *in forma*

*pauperis* status presented to it.

With regard to the underlying appeal, Appellant has appealed a final order of

the United States District Court for the District of Columbia denying his petition

for a writ of mandamus against federal and state officials, as well as the District

Court's subsequent denial of a request for reconsideration of the denial of the

petition.  The District Court entered the final order denying the petition on March

26, 2012 (Amicus App. AA54); the District Court filed what was treated as a

motion for reconsideration of the petition's denial on May 14, 2012 (Amicus App.

AA55-56) and entered it on the docket on June 4, 2012 (Amicus App. AA2),

though motion conceivably may have been presented to prison officials, sent to the

District Court, and actually received by the District Court earlier; and the District

Court entered an order denying reconsideration on June 4, 2012.  Amicus App.

AA6, AA57.  The District Court filed Appellant's Notice of Appeal on July 16,

2012 (Amicus App. AA58-59) and entered it on the docket on July 23, 2012

(Amicus App. AA2), though it appears to be dated by Appellant June 12, 2011.

Amicus App. AA58.  Pursuant to 28 U.S.C. § 1291, the Court has appellate

jurisdiction over at least the District court's denial of the motion for

reconsideration.

## <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

1.     Can Appellant proceed *in forma pauperis* under the "imminent

danger" exception (28 U.S.C. § 1915(g)) to the prohibition – known as the three-

strikes rule – in the PLRA on *in forma pauperis* status for prisoners who have

previously filed three or more actions or appeals dismissed as frivolous, malicious,

or failing to state a claim upon which relief may be granted?

- 2 -

2.      Does the three-strikes provision of the PLRA, 28 U.S.C. § 1915(g),

unconstitutionally deny indigent prisoners equal protection of the laws or access to

the courts?

**RELEVANT STATUTES**

The *amicus* has set out 28 U.S.C. § 1915 in full in the Addendum

immediately following this brief.  The most pertinent provision of the PLRA for

the current proceedings is 28 U.S.C. § 1915(g), which denies *in forma pauperis*

status to prisoners as follows:  "In no event shall a prisoner bring a civil action or

appeal a judgment in a civil action or proceeding under this section if the prisoner

has, on 3 or more prior occasions, while incarcerated or detained in any facility,

brought an action or appeal in a court of the United States that was dismissed on

the grounds that it is frivolous, malicious, or fails to state a claim upon which relief

may be granted, unless the prisoner is under imminent danger of serious physical

injury."

**STATEMENT OF THE CASE**

Appellant sought a writ of mandamus in the United States District Court for

the District of Columbia, which had jurisdiction over the petition under 28 U.S.C.

§ 1361.  Appellant moved in the District Court to proceed *in forma pauperis*

(Amicus App. AA45-51), and the court granted his motion (Amicus App. AA54),

- 3 -

though it later indicated that the granting of that motion was in error due to the existence of three strikes under § 1915(g).  *See* Amicus App. AA57.

Appellant's mandamus petition sought to compel Attorney General Eric H. Holder, Jr., to remove marijuana from Schedule I of the Controlled Substances Act (sometimes "CSA") and list it instead in Schedule V.  *See* 21 U.S.C. § 812(c). Under the CSA, the Attorney General has an obligation to reclassify a substance if he determines that it does not fit the criteria for its current classification.  *Id.* § 811(a)(2).  Appellant asserted that he suffers from osteoarthritis and that he needs marijuana to provide relief from his constant pain.  Amicus App. AA4. Appellant argues, however, that the current classification of marijuana under Schedule I prevents him from getting it for medical purposes.  Amicus App. AA4-6.  He further asserts that, but for the status of marijuana as a Schedule I controlled substance, he would be able to obtain it from a dispensary called the Beneficial Care Collective in San Diego.  Amicus App. AA6-7.

Appellant claims that the Attorney General's failure to reclassify marijuana is an abuse of discretion in light of marijuana's accepted medical use in the United States.  Amicus App. AA7.  This accepted use is evidenced in part by California's Compassionate Care Act, which authorizes the use of marijuana to treat various illnesses, including arthritis.  Amicus App. AA4.  Appellant also asserts that the Attorney General's inaction in this regard has interfered with Appellant's medical

treatment, constituting deliberate indifference to a serious medical need, cruel and unusual punishment, and the "unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Amicus App. AA4; *see also* Amicus App. AA12.

Appellant's mandamus petition also names Anthony Hedgpeth, warden of Salinas Valley State Prison.[1] Appellant claims that, although he attempted to obtain marijuana from the Beneficial Care Collective, officials at the San Diego County Jail, Richard J. Donovan State Prison, and Salinas Valley State Prison all denied his attempts. Amicus App. AA3-4. In addition, Appellant claims that because marijuana is on Schedule I, the Beneficial Care Collective risks having its business assets seized by federal authorities even if prison authorities allow it to supply him with marijuana. Amicus App. AA6.

The District Court denied Appellant's petition, holding that he had failed to establish any of the elements necessary for mandamus relief. Amicus App. AA53. In particular, the court held that Appellant had not demonstrated that he had a clear right to the relief he sought, that the Attorney General had a clear duty to act, or that Appellant had no other adequate remedy. Amicus App. AA53.

After his mandamus petition was denied, Appellant filed a document styled as "Declaration in Support of Vacate Judgment of Dismissal," which the District

---

[1] The warden is incorrectly identified as "Anthony Hedgneth" on the mandamus petition and subsequent court documents.

Court construed as a motion for reconsideration of the Memorandum Opinion and Order (amicus App. AA55-56) denying his mandamus petition. The court denied this motion (Amicus App. AA57) and also denied a subsequent motion for relief from the denial of his mandamus petition. Amicus App. AA78-100, AA 102. In the interim between his motions, Appellant filed a notice of appeal seeking appellate review in this Court of the District Court's denial of his mandamus petition and the denial of reconsideration. Amicus App. AA58-59.

On August 6, 2012, this Court ordered Appellant to show cause why he should not be required to pay the appellate filing fee, and the Court attached to that order a prior disposition noting that Appellant had three strikes against him for purposes of § 1915(g). Amicus App. AA72-74. On October 4, 2012, after Appellant failed to respond to the show cause order by the Court's deadline, the Court dismissed his appeal for lack of prosecution. Amicus App. AA104. On October 22, 2012, Appellant filed a motion for reconsideration (styled as a "Declaration in Support of The Response to the Order to Show Cause"). Amicus App. AA109-20. On November 19, 2012, in response to the Court's dismissal for lack of prosecution, Appellant filed a supplement to his motion for reconsideration (styled as "Declaration in Support of Reconsideration for Reinstating Dismiss Action"). Amicus App. AA121-25. On April 8, 2013, Appellant filed a motion for appointment of counsel. Amicus App. 126-28. On April 15, 2013, a panel of this

Court ordered that Appellant's "motion for reconsideration be referred to a merits panel." Amicus App. AA129. In its Order, the Court stated: "While not otherwise limited, the parties are directed to address in their briefs whether the 'three-strikes provision' of the [PLRA] unconstitutionally denies indigent prisoners access to the courts." Amicus App. AA129.

## STATEMENT OF FACTS

Appellant is an inmate currently incarcerated at California State Prison ("CSP"), Sacramento. He suffers from constant pain due to his osteoarthritis, which is the most common form of arthritis, characterized by breakdown of joint cartilage, leading to pain, stiffness, and disability.[2] His symptoms include "major pain" and "chronic pain in both pelvis joint[s]." Amicus App. AA19, AA20. X-rays in March 2004 revealed bilateral hip pinnings from prior surgery, mild arthritic changes from the previous x-rays, taken in December 2003, and "deformity of the femoral neck compatible with a diagnosis of previous slipped capital femoral epiphyses." Amicus App. AA15, AA17. In addition, the December 2003 x-rays revealed "mild bilateral hip osteoarthritis." Amicus App. AA17.

Using the CSP health care procedures, Appellant sought medical marijuana to relieve pain associated with his condition. Amicus App. AA19-21. Despite his

---

[2] *See* National Institutes of Health, Osteoarthritis, http://www.nlm.nih.gov/ medlineplus/osteoarthritis.html (last visited Aug. 4, 2013).

documented condition (Amicus App. AA15, AA17), prison officials at the

different institutions at which Appellant has been incarcerated denied his requests.

Amicus App. AA19.  Section 11362.5(b)(1)(A) of the California Health and Safety

Code designates arthritis as among the ailments for which marijuana is an

authorized treatment.

Appellant has also suffered from mental health problems and was

hospitalized in June 2012 following a mental health crisis characterized in part by

suicidal ideation.  Amicus App. AA109, AA121.  He was prescribed mood

stabilizing and anti-psychotic medications.  Amicus App. AA109, AA119-20.

Appellant alleges that his hospitalization and medication prevented him from filing

a timely response to the Court's show cause order.  Amicus App. AA72, AA109,

AA121.

## SUMMARY OF ARGUMENT

A.    Appellant should be allowed to proceed *in forma pauperis* in this

appeal because he qualifies for the "imminent danger" exception to 28 U.S.C. §

1915(g)'s three-strikes rule.  Appellant suffers from diagnosed medical conditions

that cause him persistent pain and suffering, and he maintains (in allegations that

must be credited) that he cannot obtain relief from these symptoms without access

to medical marijuana.  The medical symptoms Appellant describes are at least as

serious as those that this Court and other Circuits previously have deemed sufficient to trigger the imminent danger exception.

B.    Alternatively, the three-strikes provision, 28 U.S.C. § 1915(g), is unconstitutional because it violates the equal protection guarantees of the Fifth Amendment.  The law targets indigent prisoners and treats them differently than at least two similarly-situated groups:  non-prisoner indigents and non-indigent prisoners.  Because this classification burdens indigent prisoners' fundamental right of access to the courts, the Court should evaluate § 1915(g) under strict scrutiny.  The statute fails strict scrutiny because it is not narrowly tailored.  The statute is over-inclusive because it punishes litigants who have incurred dismissals for failure to state a claim upon which relief may be granted, even though those litigants are not responsible for the flood of frivolous lawsuits that Congress sought to deter by passing the statute.  Section 1915(g) is under-inclusive because it does not target the aforementioned similarly-situated classes.  Additionally, § 1915(g) is not narrowly tailored because it is by no means necessary in light of less restrictive alternatives.

In the event that the Court declines to apply strict scrutiny, it should apply intermediate scrutiny, because indigent prisoners are a quasi-suspect class, and the right of access to the judicial system is of great importance.  Given that the three-strikes provision is not substantially related to Congress's purpose in passing

§ 1915(g), the statute is unconstitutional.  Even under rational basis review,

§ 1915(g) should be deemed unconstitutional as applied to prisoners like Appellant

who have incurred all or some of their strikes due to failure-to-state-a-claim

dismissals, since the decision to include these dismissals as strikes bears no

rational relationship to Congress's stated aim with the PLRA.

Section 1915(g) is also unconstitutional because it violates the substantive

due process rights of certain indigent prisoners, such as Appellant.  The Supreme

Court has recognized that filing fees may not be required when a fundamental right

is at stake.  Like litigants who wish to obtain a divorce or contest the termination of

their parental rights, indigent prisoners seeking vitally important medical treatment

cannot be denied a judicial forum.

## STANDARD OF REVIEW

At this stage in the proceedings, the only issues for decision relate to

whether Appellant should be permitted to proceed with his appeal *in forma*

*pauperis*.  Because the Court is not reviewing any lower court ruling at this time,

but making a determination in the first instance as to *in forma pauperis* status for

appellate proceedings, there is no applicable standard of review.

## **ARGUMENT**

**I.     APPELLANT SHOULD BE ALLOWED TO PROCEED *IN FORMA PAUPERIS* UNDER THE PLRA BECAUSE HE IS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY**

Appellant should be permitted to proceed *in forma pauperis* under an exception to the three-strikes rule.  Overall, the PLRA amended the *in forma pauperis* statute "with respect to suits filed by prisoners."  *Tucker v. Branker*, 142 F.3d 1294, 1296 (D.C. Cir. 1998).  "The purpose of the Act was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time."  *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998).  The PLRA also bars a prisoner from using the installment-payment method in any civil action or appeal in federal court if, while incarcerated, he has filed at least three prior cases or appeals that were dismissed as frivolous, as malicious, or for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915(g); *see In re Kissi*, 652 F.3d 39, 40 (D.C. Cir. 2011).  This section, which, again, is "referred to as the 'three strikes rule,'" *Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 1999), "does not close the courthouse doors to prisoners who frequently file frivolous lawsuits; rather, it merely makes them pay the full ordinary filing fees sooner rather than later."  *Ashley*, 147 F.3d at 717.

But there is an exception to the three-strikes rule. Even if a prisoner has three strikes, he will be permitted to proceed *in forma pauperis* – that is, he may pay the filing fees in installments rather than up front – if he "is under imminent danger of serious physical injury" at the time he files suit. 28 U.S.C. § 1915(g).

Though the Court has identified three strikes incurred by Appellant (*see* Amicus App. AA73), Appellant's circumstances fit the imminent danger exception. Appellant endures constant pain and suffering due to his osteoarthritis, and his physical hardship persists in part because he cannot obtain medical marijuana, a widely accepted form of treatment for his condition. Amicus App. AA19-20. In turn, the Attorney General (an Appellee here), by virtue of his refusal to remove marijuana from Schedule I of the Controlled Substances Act (21 U.S.C. §§ 801, *et seq.*), has denied Appellant the ability to obtain the drug he needs to alleviate his pain and suffering.

The denial of adequate treatment for a medical condition that causes him persistent pain has caused Appellant to experience "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). This Court and numerous other federal appellate courts have evaluated similar medical claims and found that imminent danger existed. *See*, *e.g.*, *Ibrahim*, 462 F.3d at 7 (inadequate treatment for Hepatitis C caused imminent danger); *Gibbs v. Cross*, 160 F.3d 962, 965-66 (3d Cir. 1998) (headaches and other symptoms caused by lint and dust emitted from

vent in cell constituted imminent danger); *McAlphin v. Toney*, 281 F.3d 709, 710-11 (8th Cir. 2002) (mouth infection stemming from lack of dental care constituted imminent danger); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (complications caused by a change in medication gave rise to imminent danger); *Fuller v. Myers*, 123 F. App'x 365, 366-68 (10th Cir. 2005) (watery eyes, nose bleeds, and other symptoms from ventilation system allegedly in need of cleaning constituted imminent danger).

To be sure, some courts have declined to find imminent danger in certain medical cases where the harmful condition was not present at the time of litigation. *See*, *e.g.*, *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003); *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998). Appellant's case, however, is clearly distinguishable from those cases, since his pain and suffering have been ongoing and will persist as long as he is denied appropriate treatment.

Furthermore, the Court must assume Appellant's allegations regarding his condition and claims to be true and construe his allegations liberally in his favor, when determining if he is in imminent danger of serious physical injury. *See Ibrahim*, 463 F.3d at 6. On that point, in *Ciarpaglini*, the Seventh Circuit explained as follows:

> The State says Ciarpaglini's allegations are not serious enough. However, § 1915(g) is not a vehicle for determining the merits of a claim. To follow the State's logic, a district court would not just need to determine whether a prisoner is alleging some type of ongoing or

imminent harm. It would also need to fine-tune what is "serious
enough" to qualify for the exception. Is being denied heart
medication? What about a cholesterol-lowering drug? How
frequently do beatings need to occur before they are serious? This
would result in a complicated set of rules about what conditions are
serious enough, all for a simple statutory provision governing when a
prisoner must pay the filing fee for his claim. This is not
required . . . .

352 F.3d at 331.

Presuming, as this Court must, that Appellant is in persistent pain that
cannot be alleviated because of Appellee's denial of the medicinal remedy
Appellant alleges he needs, Appellant's allegations satisfy the imminent danger
exception carved out in § 1915(g). The Court should thus grant the Appellant *in
forma pauperis* status and address the merits of his claims.

## II.    IN THE ALTERNATIVE, § 1915(g) OF THE PLRA IS UNCONSTITUTIONAL

Even if Appellant could not meet the exception for prisoners under imminent
danger of serious bodily injury, the Court should permit him to proceed *in forma
pauperis* because the three-strikes rule in § 1915(g) is unconstitutional and
therefore null and void. This Court has not yet considered the constitutionality of
§ 1915(g), and therefore the question is a matter of first impression in this Circuit.
Indeed, the Court specifically asked the parties to address the statute's
constitutionality when it appointed the *amicus*, and the *amicus* now does so.

Other Circuits have considered the issue and, concededly, found the statute to be constitutional. *E.g.*, *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001) (en banc); *Carson v. Johnson*, 112 F.3d 818 (5th Cir. 1997); *Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998); *Lewis v. Sullivan*, 279 F.3d 526 (7th Cir. 2002); *Higgins v. Carpenter*, 258 F.3d 797 (8th Cir. 2001); *Lyon v. Vande Krol*, 127 F.3d 763 (8th Cir. 1997); *Rodriguez v. Cook*, 169 F.3d 1176 (9th Cir. 1999); *White v. Colorado*, 157 F.3d 1226 (10th Cir. 1998); *Rivera v. Allin*, 144 F.3d 719 (11th Cir. 1998).

But there have been strong dissents. *E.g.*, *Abdul-Akbar*, 239 F.3d at 319 (Mansmann, J., dissenting, and joined by three other Circuit Judges); *Lyon*, 127 F.3d at 766 (Heaney, J., dissenting); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (Lay, J., concurring) (asserting that § 1915(e)(2)(B)(ii), which allows *sua sponte* dismissal of an *in forma pauperis* complaint that fails to state a claim upon which relief can be granted, is unconstitutional). And many commentators have contended that § 1915(g) is unconstitutional. *See* Randal S. Jeffrey, *Restricting Prisoners' Equal Access to the Federal Courts: The Three Strikes Provision of the Prison Litigation Reform Act and Substantive Equal Protection*, 49 Buffalo L. Rev. 1099 (2001); Joseph T. Lukens, *The Prison Litigation Reform Act: Three Strikes and You're Out of Court-It May Be Effective, But is it Constitutional?*, 70 Temp. L. Rev. 471, 497-517 (1997); Joshua D. Franklin, *Three Strikes and You're Out of Constitutional Rights? The Prison*

*Litigation Reform Act's "Three Strikes" Provision and Its Effect on Indigents*, 71 U. Colo. L. Rev. 191, 203 (2000); Julie M. Rewie, *The Least Among Us: Unconstitutional Changes in Prisoner Litigation Under the Prison Litigation Reform Act of 1995*, 47 Duke L.J. 117, 146 (1997); Simone Schonenberger, *Access Denied: The Prison Litigation Reform Act*, 86 Ky. L.J. 457, 468 (1997).

This Court should now hold that § 1915(g) is unconstitutional, because the statute denies indigent prisoners access to the courts and, in so doing, violates their right to equal protection of the law. Section 1915(g) also violates the Due Process Clause of the Fifth Amendment. In particular, in showing that § 1915(g) is unconstitutional, the *amicus* addresses the statute's problematic provision that indigent prisoners shall earn a strike for dismissals based on failure to state a claim upon which relief can be granted, a facet of § 1915(g) on which none of the Circuits upholding the PLRA have focused (though some of the dissents *have*).

## A.    Section 1915(g) Denies Indigent Prisoners Access to the Courts and Violates Equal Protection

As an indigent prisoner, Appellant is a member of a class that § 1915(g) treats differently than other, similarly situated classes – specifically, non-prisoner indigents and non-indigent prisoners. If an indigent prisoner litigant has incurred three strikes due to dismissals for frivolousness, maliciousness, or failure to state a claim upon which relief may be granted, he will be denied the opportunity to proceed *in forma pauperis*, which is for that prisoner, practically speaking, the

death knell for commencing a lawsuit at all. Thus, indigent prisoner litigants are effectively denied the opportunity to have their claims heard by a court after three of their complaints have been dismissed for the reasons stated in § 1915(g), whereas non-prisoner indigents and non-indigent prisoners do not face the same barrier to bringing cases.

This differential treatment violates the Fifth Amendment's equal protection guarantee. *See United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) (noting that equal protection guarantee applicable to the federal government is contained in the Due Process Clause of the Fifth Amendment) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). As we will show, § 1915(g) breaches Appellant's equal protection rights, whether the Court conducts strict scrutiny, intermediate scrutiny, or rational basis review.

### 1.    Section 1915(g) Fails Strict Scrutiny

#### a.    Strict Scrutiny Applies Because § 1915(g) Burdens Indigent Prisoners' Access to the Courts

In evaluating equal protection claims, courts must apply strict scrutiny when fundamental rights are at issue. The Supreme Court has "treated as presumptively invidious those classifications that . . . impinge upon the exercise of a 'fundamental right.'" *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982). "With respect to such classifications, it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification has been precisely tailored

to serve a compelling governmental interest." *Id.* at 217; *accord Zablocki v. Redhail*, 434 U.S. 374, 388 (1978); *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Roe v. Wade*, 410 U.S. 113, 155 (1973). Further, the Supreme Court has said repeatedly that access to the court system, especially for prisoners, is a fundamental right. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) (finding it "established beyond doubt that prisoners have a constitutional right of access to the courts"); *see also Lewis v. Casey*, 518 U.S. 343, 346 (1996) (reaffirming the "fundamental constitutional right of access to the courts").

The prohibition on *in forma pauperis* status compelled by § 1915(g) for certain indigent prisoners (*i.e.*, those with three strikes) blocks those prisoners' access to the court system altogether, given that they have no means otherwise to pay filing fees. Because, then, § 1915(g) denies to those to whom it applies a fundamental right (namely, the right of court access), and classifications that burden fundamental rights are subject to strict constitutional scrutiny, § 1915(g) can be upheld only if "it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." *Zablocki*, 434 U.S. at 388. In fact, the full *denial* to indigent prisoners (with three strikes) of the ability to bring cases is not what is required to trigger strict scrutiny. Rather, a federal measure need only "impinge" (*Plyler*, 457 U.S. at 217), "limit[]" (*Roe*, 410 U.S. at 155), or "significantly interfere[]" (*Zablocki*, 434 U.S. at 388) with the fundamental right.

Here, by taking away the only avenue an indigent prisoner has for filing a case – that is, through attaining *in forma pauperis* status – § 1915(g) does far more than impinge, limit, or significantly interfere with an indigent prisoner's fundamental right of access to the courts.[3]

Several Circuits addressing § 1915(g)'s constitutionality have acknowledged that strict scrutiny would otherwise apply, but have found a safety valve to operate so as to avoid such scrutiny; yet, that safety valve has no application in Appellant's circumstances.  For instance, in *Wilson v. Yaklich*, 148 F.3d 596 (6th Cir. 1998), the Sixth Circuit recognized the fundamental right of access to the courts and opined that, "[t]o the extent . . . any provisions of 28 U.S.C. § 1915(g) restrict the right to have arguably meritorious claims reviewed, those provisions could be deemed unconstitutional."  *Wilson*, 148 F.3d at 606; *accord Abdul-Akbar*, 239 F.3d at 317-18.  But the court declined to go that far.  In evaluating the prisoner-litigant's equal protection challenge to § 1915(g), the Sixth Circuit decided not to

_____

[3] Appellees might try to assert that access to the courts is itself not a fundamental right but is only fundamental if the lawsuit to be brought in the courts involves, in turn, fundamental interests.  But the better view is that access to the courts is alone a fundamental right.  Chief Justice Marshall long ago observed that "the very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, *whenever he receives an injury*."  *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (emphasis added).  In any event, as explained more fully later (*see infra* pp. 43-44), the interests at the bottom of Appellant's lawsuit are themselves fundamental, because at stake is "the right[] to be free from arbitrary infliction of serious physical injury."  *Abdul-Akbar*, 239 F.3d at 327 (Mansmann, J., dissenting).

apply strict scrutiny, reasoning that the statute did not infringe upon the

fundamental right of access because the prisoner could have filed his 42 U.S.C.

§ 1983 lawsuit in state court, where no limits seemingly would be put on the

prisoner's ability to attain *in forma pauperis* status. *Wilson*, 148 F.3d at 605;

*accord Abdul-Akbar*, 239 F.3d at 318 ("Appellant is not precluded from filing his

§ 1983 Complaint in another court system that does not have a 'three strikes'

provision.")

Appellant Thomas has no similar ability to file his lawsuit in state court.

This is a mandamus action against a federal official, pursuant to 28 U.S.C. § 1361.

Section 1361 provides that "[t]he *district courts* shall have original jurisdiction of

any action in the nature of mandamus to compel an officer or employee of the

United States . . . to perform a duty owed to the plaintiff." *Id.* (emphasis added). It

gives no authority or jurisdiction to the state courts or even to this Court.

Consequently, without *in forma pauperis* status in a federal district court and

otherwise being without monetary means to post the filing fee, Appellant would

have no forum in which to file his lawsuit, and his fundamental right of access to

the courts to present a serious grievance regarding a federal officer's failure to act

would be wholly denied.

Moreover, the precise issue before the Court is whether Appellant should be

afforded *in forma pauperis* status for the current *appeal*. The District Court

permitted Appellant to proceed with his lawsuit *in forma pauperis* (apparently, by mistake, *see supra* p. 4), and dismissed the case on its merits.  There is no alternative forum for *appellate* review of the District Court's merits decision – state or federal.  Neither the District of Columbia nor California local courts (where Appellant might avoid the filing fee) has jurisdiction to review the District Court's actions.  Hence, Appellant cannot bring his appeal in a tribunal where *in forma pauperis* status might be granted, and his right of access to an appellate court therefore is denied on account of § 1915(g) and being without resources to pay this Court's filing fee.  While there might be no right in the Constitution to appellate review in the first place (as opposed to filing original actions), the fundamental right of access to the courts is implicated where Congress "does grant appellate review [but] . . . [does] so in a way that discriminates against some convicted defendants on account of their poverty."  *Griffin v. Illinois*, 351 U.S. 12, 18 (1956); *see also Three Strikes*, 71 U. Colo. L. Rev. at 209 (noting that, "[a]lthough the right to an appeal is not constitutionally guaranteed, equal protection concerns nevertheless arise when this right is effectively denied to only one class of litigant") (citing *Douglas v. California*, 372 U.S. 353, 357-58 (1963)).[4]

---

[4] Even if the holdings of decisions like the Sixth Circuit in *Wilson* and the Third Circuit majority in *Abdul-Akbar* were not inapplicable on grounds that a state court forum there (but not here) was available, the decisions are otherwise unpersuasive in their reasoning that the existence of an alternative state court forum can allow for avoidance of strict scrutiny.  *See Rivera*, 144 F.3d at 724 n.9 (Eleventh Circuit

Accordingly, with their safety valve for avoiding strict scrutiny (namely, the existence of a state court forum) being unavailable in Appellant's circumstances, decisions like *Wilson* and *Abdul-Akbar* support the notion that strict scrutiny applies for examination of § 1915(g): the fundamental right of access remains burdened due to Congress's "'refusal to admit [indigent prisoners with three strikes] to its courts.'" *Abdul-Akbar*, 239 F.3d at 317 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 380-81 (1971)); *cf. Romer v. Evans*, 517 U.S. 620, 633 (1996) ("A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense.").

By analogy, this Court's decision in *Tucker v. Branker*, 142 F.3d 1294 (D.C. Cir. 1998), likewise supports the proposition that strict scrutiny should apply, for

declining to place reliance on availability of state forum). Assuming Appellant could bring his action in state court (which, again, he cannot, given that it is a federal mandamus action), the near certainty is that the federal officials would remove the case to federal court, under 28 U.S.C. § 1331 as raising federal questions or under 28 U.S.C. § 1442(a)(1) as actions against federal officers under color of federal law. In that instance, "[t]he likely effect [would be] that [the] indigent plaintiff subject to the three strikes rule would lose his ability to appeal." *Abdul-Akbar*, 239 F.3d at 330 (Mansmann, J., dissenting). "The prospective loss of such an important procedural safeguard is a very substantial burden on affected litigants" (*id.*), and it is also discriminatory in its own right, since all other litigants raising the same claim in state court would have a federal appeal right (*in forma pauperis* or otherwise) upon removal to federal court. And again, the test for strict scrutiny is whether Congress has *impinged*, *limited*, or *significantly interfered with* a fundamental right, which – given all of these complications – relegating Appellant to a state tribunal plainly does.

that decision too found strict scrutiny avoided in a PLRA situation only as a result of safety valves that here are inapplicable. In *Tucker*, the Court upheld various other provisions of § 1915 requiring prisoner litigants to contribute more toward their filing fees than is required of ordinary *in forma pauperis* litigants. *See* 28 U.S.C. § 1915(b)(1) (requiring prisoner generally to pay 20% of his current assets to commence case); *id.* § 1915(b)(2) (requiring prisoner to pay subsequently monthly installments of 20% of prisoner's assets, until filing fee is fully paid). The *Tucker* Court declined to apply strict scrutiny to review those provisions, in light of the modest nature of the payment requirement and, most importantly, "safety-valve[s]" allowing a complete waiver of up-front filing fees where the prisoner was asset-less and a waiver thereafter of monthly installment payments where the prisoner's assets were $10. *Tucker*, 142 F.3d at 1297; *see* 28 U.S.C. § 1915(b)(2), (b)(4). As a result of the safety valves, the provisions "d[id] not burden a prisoner's right of effective access to the courts." *Tucker*, 142 F.3d at 1297-98, 1300.

Unlike those provisions of § 1915 that merely require prisoner litigants to chip in small amounts of money over time and ultimately still allow a filing in *all* circumstances even if the prisoner cannot meet the installment-payment provisions' requirements, § 1915(g) leaves no possibility for indigent prisoners with three strikes to file meritorious lawsuits (unless they involve imminent risk of

serious physical injury, *see supra* p. 11).  Section 1915(g) presents an

"'insurmountable barrier to filing suit'" and therefore does – unlike the provisions

in *Tucker* – "burden" the prisoner's access to the courts.  *Id.* at 1299, 1300 (quoting

*Roller v. Gunn*, 107 F.3d 227, 232 n.1 (4th Cir. 1997)).[5]

　　　In sum, § 1915(g) targets indigent prisoners and significantly burdens their

ability to access the court system.  "Because section 1915(g) does impose a

substantial burden on the fundamental rights . . . of the class against whom it is

directed, the next step [will be] to examine whether it is narrowly tailored to serve

---

[5] One argument the Seventh and Eleventh Circuits have pressed against strict scrutiny deserves mention.  Whereas this Court in *Tucker*, the Sixth Circuit in *Wilson*, and the Third Circuit in *Abdul-Akbar* suggested that strict scrutiny should apply, absent the presence of safety-valves that otherwise allowed for the commencement of lawsuits, the Seventh and Eleventh Circuits said indigent prisoners with three strikes were not burdened because they technically still could file cases, just not via the *in forma pauperis* route.  *See Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002); *Rivera*, 144 F.3d at 723.  They can "[s]ave up in advance" or "[b]orrow the filing fee from friends or relatives," among other options.  *Lewis*, 279 F.3d at 530.  Judge Mansmann, in his dissent in *Abdul-Akbar*, correctly asserted that an argument of that sort "reflects a surprising disregard for the practical financial constraints faced by indigent prisoners, and appears to ignore the reality, recognized by the Supreme Court, that even a small prepayment obligation can pose an insurmountable hurdle." 239 F.3d at 328 (citing *Boddie*, 401 U.S. at 380).  Moreover, the standard, again, is whether § 1915(g) impinges, limits, or significantly interferes with the indigent prisoners' right of access, and the fact that affected prisoners can only obtain access to the courts if they have adequate time to save money or have relatives with means is a sufficient barrier under the governing standard.  *See Banos v. O'Guin*, 144 F.3d 883, 885 n.1 (5th Cir. 1998) ("It is possible that a potential litigant who is denied IFP status under this provision will not have the ability to pay the entire filing fee within the statute of limitations or, in the case of an appeal, within the time for filing an appeal, and will thereby be precluded from litigating or appealing his case on the merits.").

a compelling government interest." *Id. Abdul-Akbar*, 239 F. 3d at 330 (Mansmann,

J., dissenting); *accord Lyons*, 127 F.3d at 767 (Healy, J., dissenting).

> **b.     Section 1915(g) Fails Strict Scrutiny Because It Is Not Narrowly Tailored**

Section 1915(g) cannot withstand strict scrutiny, because it is not narrowly

tailored to serve compelling interests.  "Congress enacted the PLRA in order to

limit the filing of frivolous and vexatious prisoner lawsuits." *Abdul-Akbar*, 239

F.3d at 314 (majority opinion); *see also Tucker*, 142 F.3d at 1296 ("the goal of the

PLRA was to reduce the number of . . . meritless lawsuits").[6]  Congress viewed as

"alarming" the "explosion in the number of lawsuits filed by State and Federal

prisoners" (141 Cong. Rec. 14570 (1995)), most of which it viewed as "outright

---

[6] *See*, *e.g.*, 141 Cong. Rec. S7524 (daily ed. May 25, 1995) (remarks of Sen. Dole) ("Frivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial and legal resources, and affect the quality of justice enjoyed by the law-abiding population."); 141 Cong. Rec. S7526 (daily ed. May 25, 1995) (remarks of Sen. Kyl) (noting that "this bill will deter frivolous inmate lawsuits" and repeatedly referencing the problem of frivolous and "meritless" inmate lawsuits); 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) (remarks of Sen. Hatch) ("I am pleased to be . . . introducing the Prison Litigation Reform Act of 1995.  This landmark legislation will help bring relief to a civil justice system overburdened by frivolous prison lawsuits.  Jailhouse lawyers with little else to do are tying our courts in knots with an endless flood of frivolous litigation."); 141 Cong. Rec. H14105 (daily ed. Dec. 6, 1995) (remarks of Rep. LoBiondo) (voicing strong support for the PLRA and referencing its goal of "deterring frivolous claims").  Apart from these statements indicating a focus on frivolous lawsuits, several Senators' statements are sprinkled with anecdotes about particularly frivolous actions, including complaints about the brand of shoe issued by the prison or about receiving chunky instead of creamy peanut butter.  *See* 141 Cong. Rec. S14418 (daily ed. Sept. 27, 1995) (remarks of Sens. Hatch, Kyl, and Abraham).

frivolous." *Tucker*, 132 F.3d at 1296.  To combat the problem, Congress

relinquished *in forma pauperis* status *per se* for prisoners, instead requiring them to

pay filing fees in installments based on a percentage of their assets (*see supra* p.

11).  In that way, Congress hoped to make prisoners "think twice" about their

claims and "not just file reflexively."  141 Cong. Rec. S7498-01, S7526 (daily ed.

May 25, 1995) (remarks of Sen. Kyl).  Further to this end, and most drastically,

Congress enacted § 1915(g), which, of course, penalizes prisoners through

relinquishment of *in forma pauperis* status even under the installment-payment

plan if the prisoner has had three lawsuits dismissed as frivolous or malicious or

for failure to state a claim upon which relief can be granted.

Section 1915(g) is not narrowly tailored to serve the PLRA's ends, because

it is both over- and under-inclusive.  Under strict scrutiny, a law is not narrowly

tailored if its classification is either overly or insufficiently inclusive in light of the

statutory purpose.  In *Kramer v. Union Free School Dist. No. 15*, 395 U.S. 621

(1969), the Supreme Court evaluated a New York statute limiting the fundamental

right to vote.  The law aimed to limit participation in school board elections to

those with an interest in the outcome.  *Id*. at 630-31.  Under the law, only those

who either owned real property in the district or were parents or custodians of

children enrolled in the local public schools were permitted to vote.  *Id*. at 622.  In

striking down the law, the Court found that the classifications were over-inclusive

because they stripped voting rights from many who might well have had an interest (such as non-property owners whose tax dollars were used by the school) and under-inclusive because they preserved the voting rights of certain citizens who had no interest in the elections (such as property owners unaffected by school board decisions). *Id*. at 632.

The first problem with § 1915(g) is its over-inclusiveness, because it imposes strikes for dismissals for failure to state a claim upon which relief may be granted. The other two occurrences that generate strikes under § 1915(g) – *i.e.*, dismissals for frivolousness and maliciousness – arguably do seem to relate to Congress's goal of deterring frivolous prisoner suits, for a statute intended to give litigants pause before filing abusive actions serves its purpose by punishing those with prior dismissals for those very reasons. But a prisoner who has previously filed a case dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted may have engaged in no frivolous conduct, given that a dismissal under Rule 12(b)(6) is *not* a signal that the claim was frivolous or abusive.

The Supreme Court explained the difference between dismissals for frivolousness and for failure to state a claim in *Neitzke v. Williams*, 490 U.S. 319 (1989). In that case, the Court interpreted a different (and pre-PLRA) provision of 28 U.S.C. § 1915 that allowed federal courts to dismiss complaints *sua sponte* if

they were frivolous or malicious. In that context, the Court had to determine

whether a dismissal for failure to state a claim was the same as a dismissal for

frivolousness, since the former had not then been included as a separate ground for

a court's *sua sponte* dismissal. *Id*. at 324. The Supreme Court ruled that the legal

concepts were clearly distinct. *Id*. 328-329. The Court explained that a dismissal

on 12(b)(6) grounds is appropriate "[w]hen a complaint raises an *arguable*

*question of law*, which the district court *ultimately* finds is correctly resolved

against the plaintiff." *Id*. 328 (emphasis added). These were the Court's

reflections on the substantiality of complaints that might be dismissed under Rule

12(b)(6):

> Close questions of federal law[] . . . have on a number of occasions
> arisen on motions to dismiss for failure to state a claim, and have been
> substantial enough to warrant this Court's granting review, under its
> certiorari jurisdiction, to resolve them. *See, e. g., Estelle* v. *Gamble*,
> 429 U.S. 97 (1976); *McDonald* v. *Santa Fe Trail Transportation Co.*,
> 427 U.S. 273 (1976); *Bivens* v. *Six Unknown Fed. Narcotics Agents*,
> 403 U.S. 388 (1971); *Jones* v. *Alfred Mayer Co.*, 392 U.S. 409 (1968).
> It can hardly be said that the substantial legal claims raised in these
> cases were so defective that they should never have been brought at
> the outset. . . . Indeed, we recently reviewed the dismissal under Rule
> 12(b)(6) of a complaint based on 42 U. S. C. § 1983 and found by a 9-
> to-0 vote that it had, in fact, stated a cognizable claim – a powerful
> illustration that a finding of a failure to state a claim does not
> invariably mean that the claim is without arguable merit. *See Brower*
> *v. County of Inyo*, 489 U.S. 593 (1989).

*Neitzke*, 239 F.3d at 328-329.

Thus, by singling out for strikes under § 1915(g) indigent prisoners who have had claims dismissed for failure to state a claim, Congress has exacted a penalty having no relation to its stated purpose in the PLRA of stemming frivolous prisoner litigation. *See Mitchell*, 112 F.3d at 1492 (Lay, J., concurring) (there is a "distinction between . . . dismissal for failure to state a claim and . . . dismissal for frivolousness," so that penalizing a prisoner who has obtained the former "cannot . . . be justified by the stated purposes of the PLRA – to deter frivolous prisoner litigation and ease the burden of such suits on the federal courts"); *see also Abdul-Akbar*, 239 F.3d at 320 n.3 (Mansmann, J., dissenting) ("Although dismissals for failure to state a claim do not necessarily signify abuse, they nonetheless count as 'strikes' for purposes of section 1915(g)."). By not being limited solely to punishing prisoners who file frivolous and malicious lawsuits, and instead extending to prisoners who file formidable claims that are nonetheless dismissed under Rule 12(b)(6), § 1915(g) is not narrowly tailored to serve the end of curbing abusive prisoner litigation and fails strict scrutiny.[7]

---

[7] With the advent of the heightened pleading standard under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), § 1915(g)'s imposition of strikes for dismissals for failure to state a claim recently became even more ill-suited to the purpose of stemming frivolous lawsuits. As some commentators have noted, the new pleading standard "risks increased difficulty for many prospective claimants – some with claims that may well have merit and involve important public policies – to survive a Rule 12(b)(6) motion." Arthur R. Miller, *From Conley to Twombly to Iqbal: A Double Play on the Federal Rules of Civil Procedure*, 60 Duke L. J. 1, 47 (2010). The *Iqbal* case in particular

Likewise, if the purpose of the PLRA was to put a price on a prisoners'

filing of unmeritorious lawsuits and therefore to make them stop and think before

filing such actions and then ultimately decline to submit the filing, § 1915(g)'s

inclusion of strikes for dismissals for failure to state a claim cannot further that

objective.  Whereas a frivolous lawsuit is not hard to spot, even seasoned attorneys

(let alone *pro se* prisoners) oftentimes cannot predict whether a claim will survive

a Rule 12(b)(6) motion.  It is far-fetched to think that a prisoner (in all likelihood

*pro se*) could distinguish ahead of time between a claim that would survive a Rule

12(b)(6) motion and one that would not, such that the prisoner could meaningfully

screen claims to avoid filing deficient pleadings.[8]

Still another problem of over-inclusiveness is that § 1915(g), once three

strikes are incurred, does not just bar frivolous actions or even actions that would

---

"may eliminate a range of arguably weak but potentially meritorious cases."  *Id.* at
28; *accord* Robert G. Bone, *Plausibility Pleading Revisited and Revised: A
Comment on Ashcroft v. Iqbal*, 85 Notre Dame L. Rev. 849, 878-79 (2010)
(expressing similar concerns).  Now more than ever, arguable actions might be
dismissed under Rule 12(b)(6), earning a prisoner a strike that was designed not to
punish meritorious filings, but to punish abusive ones.

[8] Appellant is a worthy candidate to challenge § 1915(g) on the grounds that it is
over-inclusive by extending to dismissals for failure to state a claim upon which
relief can be granted.  The Court's initial order requiring Appellant to show cause
why he should not be required to pay the full filing fee due to the existence of three
strikes lists three lawsuits (and then appeals of dismissals of the lawsuits) as
constituting strikes; but only one of those (and then the appeal in the case) was
dismissed as frivolous or malicious.  The other two were dismissed for failure to
state a claim upon which relief can be granted.  Amicus App. AA72-74.

be dismissed for failure to state a claim upon which relief can be granted.  Instead, it prevents the filing of *all* new lawsuits, including those that would have overwhelming merit and be successful.  That is, § 1915(g) "cuts off non-frivolous claims filed by indigent prisoners within its scope."  *Abdul-Akbar*, 239 F.3d at 331 (Mansmann, J., dissenting).  To survive strict scrutiny, § 1915(g) would, at a minimum, be drawn to deter only abusive new filings; but the provision is not so confined.

Not only is § 1915(g) over-inclusive, but it also suffers from under-inclusion.  The statute is under-inclusive because it does nothing to curtail the filing of meritless lawsuits by members of two similarly-situated classes:  (1) prisoners with funds sufficient to cover filing fees; and (2) indigents who are not incarcerated.  Prisoners who are not indigent can habitually file lawsuits – even utterly ridiculous ones – and the federal courts must repeatedly evaluate their claims.  The three-strikes provision could easily have been applied to these similarly situated groups, but instead was applied only to indigent prisoners.

Finally, § 1915(g) is not narrowly tailored because it substantially burdens the right of access to courts when less burdensome alternatives may well have been sufficient to achieve Congress's purpose.  Under strict scrutiny, narrow tailoring requires that the legislature consider less burdensome alternatives.  *See Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 n.6 (1986) (defining narrow tailoring as

requiring "consideration of whether lawful alternative and less restrictive means could have been used"). The less restrictive alternatives Congress could have relied upon are easy to envision, largely because Congress *did* enact several alternative solutions at the same time that it passed § 1915(g). Under the PLRA, Congress not only created the three-strikes provision, but also permitted *sua sponte* dismissals of *in forma pauperis* suits for frivolousness or maliciousness or for failure to state a claim upon which relief may be granted (28 U.S.C. § 1915(e)(2)(B)(i)-(ii)), required *in forma pauperis* prisoner-litigants to pay the full filing fees over time and a certain percentage of the fees up front (28 U.S.C. § 1915(b)), and required prisoners to exhaust administrative remedies before filing 42 U.S.C. § 1983 lawsuits regarding their conditions of confinement (42 U.S.C. § 1997e(a)). And particularly relevant to Appellant's situation, Congress separately required courts to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeked redress from a governmental entity or officer or employee of a government entity" and then to dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915A(a), (b)(1).

None of these other remedies burden indigent prisoners' rights of access to the courts as severely as § 1915(g), which functionally deprives prisoners who

have "struck out" of the ability to access the court system, no matter how meritorious their future claims may be. Congress failed to consider whether the above-mentioned alternatives would have been sufficient by themselves to unburden the federal courts. What is more, Congress could have enacted a less burdensome three-strikes provision, requiring, for example, that certain prisoners obtain special leave of the court before proceeding *in forma pauperis*. This non-exhaustive list illustrates that Congress passed too restrictive a measure in § 1915(g), given that it might well have achieved its stated purpose through alternatives that did not so significantly burden indigent prisoners' fundamental rights of access to the courts.

For all of these reasons – namely, over-inclusiveness, under-inclusiveness, and the availability of less drastic means to accomplish its goals – § 1915(g) is not narrowly tailored to serve its purposes. "Because section 1915(g) is not narrowly tailored to serve a compelling governmental purpose, its substantial infringement of indigent prisoners' fundamental right of access to the courts . . . amounts to an unconstitutional deprivation of the equal protection of the laws . . . ." *Abdul-Akbar*, 239 F.3d at 332 (Mansmann, J., dissenting).

### 2.      Section 1915(g) Also Fails Intermediate Scrutiny

#### a.   If Not Applying Strict Scrutiny, This Court Should Apply Intermediate Scrutiny

Should this Court decline to apply strict scrutiny in its equal protection

analysis, it should instead apply intermediate scrutiny. This heightened level of review is most often applied to laws involving quasi-suspect classifications, examples of which include gender and illegitimacy. *See Craig v. Boren*, 429 U.S. 190, 197 (1976) (gender); *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982) (illegitimacy); *see generally United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) (applying "careful scrutiny" to federal Defense of Marriage Act, which discriminated against same-sex couples). Suspect classes in general are identified based on a range of factors, particularly historical prejudice, political powerlessness, and immutability. *See Cleburne Living Ctr. v. Cleburne*, 726 F.2d 191, 196-97 (5th Cir. 1984) (collecting cases). Fully suspect classifications, which are examined using strict scrutiny (*see, e.g., City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493-94 (1989) (applying strict scrutiny to a racial classification)), are distinct from quasi-suspect classifications. The latter share the characteristics of the former, except that legitimate reasons exist for treating quasi-suspect classes differently, as in the case of gender classifications based on the physical differences between males and females. *See Ramos v. Town of Vernon*, 353 F.3d 171, 179 (2d Cir. 2003) (discussing difference between suspect and quasi-suspect classes).

Saddled with the prejudices and powerlessness that come with both poverty and incarceration, indigent prisoners form a class that is uniquely in need of

protection from disparate treatment.  Laws like § 1915(g) that specifically target

that class must therefore be scrutinized using a heightened form of review.  *See*

*Windsor*, 133 S. Ct. at 2693 ("The Constitution's guarantee of equality must at the

very least mean that a bare congressional desire to harm a politically unpopular

group cannot justify disparate treatment of that group.") (internal quotation marks

omitted).  "[P]ossessing neither means nor liberty (and having incurred the

disapprobation of society), indigent prisoners are a discrete, insular minority that is

perhaps the group least able to protect its fundamental rights through majoritarian

processes."  239 F.3d at 326 n.18 (Mansmann, J., dissenting).  As both liberty-less

and treasure-less, they are among society's most vulnerable citizens.  Society looks

down upon them, they cannot vote (and many, including felons like Appellant,

may *never* be able to vote), and their condition is almost entirely immutable, since

prisoners obviously cannot change their incarcerated status and have limited means

to alleviate their poverty.  When their rights are threatened, indigent prisoners

know they cannot turn to ordinary political processes for relief.

Intermediate scrutiny is triggered not only by laws that employ a quasi-

suspect classification but also by laws that implicate an important though not

fundamental right.  Should this Court decide that access to the court system is not a

sufficiently fundamental right to trigger strict scrutiny, it should at least find that it

is an *important* right requiring intermediate scrutiny.  In *Plyler v. Doe*, 457 U.S.

202 (1982), the Supreme Court examined Texas's policy of barring children of

undocumented aliens from its schools.  The Court appeared to apply an

intermediate form of scrutiny – requiring demonstration of a "substantial"

governmental interest – not because a suspect class was involved, but because

education, though not a fundamental right, was of great importance.  *Id*. at 230; *see*

*Ramos v. Town of Vernon*, 353 F.3d 171, 176-81 (2d Cir. 2003) (applying

intermediate scrutiny when analyzing curfew laws that affected a politically

powerless group (minors) and curtailed an important right (freedom of intrastate

travel)); *see also Hutchins v. District of Columbia*, 188 F.3d 531, 541-46 (D.C. Cir.

1999) (evaluating similar law using intermediate scrutiny).  The circumstances of

Appellant's case are similar in that they involve *both* the presence of a quasi-

suspect class *and* the implication of an important right, making the case for

intermediate scrutiny particularly powerful.

> **b.    Section 1915(g) Fails Intermediate Scrutiny Because It Is Not Substantially Related to the Purpose the Statute Is Intended to Serve**

"To withstand intermediate scrutiny, a statutory classification must be

substantially related to an important governmental objective."  *Clark v. Jeter*, 486

U.S. 456, 461 (1988).  While the government's interest in unburdening the

congested federal court system may be an important one, § 1915(g)'s targeting of

indigent prisoners is not substantially related to the statute's purpose.  In *Hutchins*

*v. District of Columbia*, 188 F.3d 531 (D.C. Cir. 1999), this Court applied intermediate scrutiny and announced a formula for judging whether a classification is substantially related to the governmental interest being served. The closeness of that fit depends upon: (1) the factual premises upon which the legislature based its decision; (2) the logical connection the remedy has to those premises; and (3) the scope of the remedy employed. *Id.* at 542.

Applying this multi-factor test, § 1915(g) cannot plausibly be viewed as substantially related to Congress's purpose. Regarding the factual premises upon which Congress based its decision, the *amicus* does not dispute that the federal court system's overloaded dockets were well documented or that Congress had ample reason to believe frivolous and malicious filings by prisoners were a significant part of that problem. What appears to be unsupported by any evidence is the decision to include failure-to-state-a-claim dismissals as strikes. While it was arguably reasonable for Congress to decide that filers of frivolous and malicious lawsuits should have a harder time getting through the courthouse doors, the same cannot be said about those who have had prior lawsuits dismissed for technical legal reasons.

In a similar vein, there exists a weak connection between Congress's chosen remedy and the rationale for § 1915(g). In seeking to keep meritless lawsuits out of the federal court system, Congress has chosen to strip the *in forma pauperis*

- 37 -

privilege from litigants who have not necessarily demonstrated any propensity to file such suits – namely, indigent prisoners whose three strikes are composed partly or entirely of Rule 12(b)(6) dismissals. The scope of § 1915(g) is also improper because, as stated earlier, the remedy is both under and over-inclusive. By failing to address meritless filings by non-indigent prisoners and non-prisoner indigents, the statute addresses the issue of abusive filings too narrowly. By punishing those whose cases have been dismissed on Rule 12(b)(6) grounds, the statute sweeps too broadly. On these bases, under this Court's test put forth in *Hutchins*, § 1915(g) fails intermediate scrutiny.

### 3.    Section 1915(g) Likewise Fails Rational Basis Review

In the event this Court decides to evaluate § 1915(g) using rational basis review, it should find that the statute fails even that standard. *See Mitchell*, 112 F.3d at 1491 (Lay, J., concurring) (finding that, with respect to § 1915(e)(2)(B)(ii), which allows for *sua sponte* dismissal of claims that fail to state claims upon which relief can be granted rather than full adversary proceedings on any Rule 12(b)(6) motion, "Congress has deprived prisoners and other indigents of a significant procedural right that noninstitutionalized litigants enjoy, and has not provided a *rational* justification for this differential treatment") (emphasis added).

Under rational basis review, a statute's differential treatment of similarly situated classes is unconstitutional unless it bears a rational relationship to a

legitimate legislative end. *See Romer v. Evans*, 517 U.S. 620, 631 (1996). Even accepting that Congress's purpose in passing § 1915(g) was legitimate, the statute bears no rational relationship to its stated purpose, at least insofar as it revokes the *in forma pauperis* privilege of those who have "struck out" due to Rule 12(b)(6) dismissals. To reiterate arguments made earlier, motions and dismissals involving failure to state claims upon which relief can be granted are an everyday part of the judicial system that should not be tied in with dismissals for frivolousness and maliciousness. In seeking to deny the *in forma pauperis* privilege to those responsible for clogging the federal court system with meritless lawsuits, Congress in no way served its intended purpose by including failure-to-state-a-claim dismissals within the three-strikes provision.

The ubiquitous nature of Rule 12(b)(6) motions and dismissals helps illustrate that lawsuits dismissed for failure to state a claim are nothing like the frivolous and malicious lawsuits Congress hoped to deter. A study performed by the Federal Judicial Center, which examined 23 federal district courts, found that motions to dismiss for failure to state a claim were filed in 6.2% of all cases. Joe S. Cecil, *et al.*, *Motions to Dismiss for Failure to State a Claim After Iqbal: Report to the Judicial Conference Advisory Committee on Civil Rules* 8 (Mar. 2011), http://www.fjc.gov/public/pdf.nsf/lookup/motioniqbal.pdf/$file/motioniqbal.pdf. That study, which *excluded* prisoner and *pro se* lawsuits, determined that the

motions were granted 75% of the time. *Id*. at 13. Another study by the Statistics Division of the Administrative Office of the U.S. Courts found that among the roughly 240,000 federal cases filed in 2009, motions to dismiss were filed in approximately 88,000 of them, and over 32,000 of those motions were granted.[9] Statistics Division, Administrative Office of the United States Courts, *Motions to Dismiss: Information on Collection of Data* (Apr. 27, 2010). Given that prisoner-initiated lawsuits account for less than 9% of all private suits filed in federal courts (*see* Lonny Hoffman, *Twombly and Iqbal's Measure: An Assessment of the Federal Judicial Center's Study of Motions to Dismiss*, 2012 Fed. Cts. L. Rev. 34 n.92 (2012)), one could safely conclude that, even excluding prisoner suits, several thousand Rule 12(b)(6) motions are *granted* every year.

By including failure-to-state-a-claim dismissals within §1915(g), Congress has targeted certain indigent prisoners for differential treatment in a way that is wholly unrelated to the purpose that statute was meant to serve. As applied to prisoners who have been deprived of *in forma pauperis* status due to prior Rule 12(b)(6) dismissals, § 1915(g) fails rational basis review and is unconstitutional.

---

[9] This study noted that most of the motions evaluated were filed under Rule 12(b)(6), but that the study also included motions filed under Rule 12(b)(1)-(5) and (7).

**B.     Section 1915(g) Violates the Due Process Clause of the Fifth Amendment**

In addition to violating equal protection, § 1915(g) also violates the direct guarantees of due process in the Fifth Amendment.  The Supreme Court has recognized a category of rights where the risks associated with deprivation is so severe that the imposition of court fees on indigent plaintiffs seeking to vindicate those rights violates due process.  In *Griffin v. Illinois*, 351 U.S. 12 (1956), for example, the Court held that the imposition of a transcript fee on an indigent criminal defendant seeking to appeal his conviction violated the defendant's due process (and equal protection) rights.  The plurality in *Griffin* stated:

> Such a denial [to be heard] is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law.  There can be no equal justice where the kind of a trial a man gets depends on the amount of money he has.  Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.

*Id.* at 19.

The Supreme Court elaborated this strain of its access to courts doctrine in *Boddie v. Connecticut*, 401 U.S. 371 (1971).  In that case, the Court held that a class of welfare recipients who were prevented from obtaining divorces because they could not afford the court fees was entitled to a waiver of those fees.  In part because the state court was the sole avenue for the relief sought by the plaintiffs, the Court held that the failure to provide a fee waiver was the equivalent of

denying them "an opportunity to be heard upon their claimed right." *Id.* at 380 (citation omitted). This denial, "in the absence of a sufficient countervailing justification for the State's action, [was] a denial of due process." *Id.* at 380-81.

The Court faced a similar question in *M.L.B. v. S.L.J.*, 519 U.S. 102 (1996). That case involved the constitutionality of a Supreme Court of Mississippi ruling that denied *in forma pauperis* status to a parent seeking to appeal the termination of her parental rights. Although the parent was able to afford the filing fees for her appeal, she did not have the approximately $2,350 necessary to prepay the record preparation fees. The Court held that Mississippi could not "deny M.L.B., because of her poverty, appellate review of the sufficiency of the evidence on which the trial court found her unfit to remain a parent." *Id.* at 107. After reviewing a host of cases in which the Court confronted the scope of an indigent party's right to access the courts, the Court found that *M.L.B.* belonged in the category of cases "in which the State may not 'bolt the door to equal justice.'" *Id.* at 110 (quoting *Griffin*, 351 U.S. at 24 (Frankfurter, J., concurring)).

A primary driver of the Court's decision in *M.L.B.*, as it was in *Griffin*, was the availability of an appeal for non-indigent appellants. While the Court acknowledged that it "had never held that the States are required to establish avenues of appellate review," it reaffirmed the "fundamental" principle that "once established, these avenues [of appeal] must be kept free of unreasoned distinction

that can only impede open and equal access to the courts." *M.L.B.*, 519 U.S. at 111 (quoting *Rinaldi v. Yeager*, 384 U.S. 305, 310 (1966)). The *M.L.B.* Court also emphasized that "*Griffin's* principle has not been confined to cases in which imprisonment is at stake." *Id.* at 111 (citing *Mayer v. Chicago*, 404 U.S. 189 (1971)).

Although the category of civil cases in which the state must provide equal access to the courts regardless of ability to pay is narrow, the plaintiffs in those cases are, in a crucial way, similar to Appellant and indigent prisoners like him. Although those cases tended to involve "'[c]hoices about marriage, family life, and the upbringing of children'" – "'associational rights'" ranked by the Court "'as of basic importance in our society'" (*M.L.B.,* 519 U.S. at 116 (quoting *Boddie*, 401 U.S. at 376)), the crucial question in *Boddie* and *M.L.B.* was the nature of the fundamental interest at stake. *See id.* at 114.

Denying Appellant *in forma pauperis* status in this case will take away his only avenue to pursue a serious and fundamental interest. The fundamental interest Appellant seeks to pursue is relief from severe, chronic, and debilitating pain. Deliberate denial of medical treatment implicates a serious fundamental interest. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment") (citation

omitted); *see also Universal Declaration of Human* Rights, G.A. Res. 217A(III), U.N. Doc. A/810 (Dec. 10, 1948), art. 25(1) (recognizing right to medical care).[10]

Moreover, the three-strikes provision's exception for plaintiffs facing imminent danger of serious bodily injury shows that Congress understood the need to provide a safety mechanism where serious issues of health and safety exist. But the PLRA's "safety valve" is not wide enough to ensure that prisoners facing serious physical harms or deprivations are able to seek relief in a court. For one thing, the imminence requirement will screen out indigent prisoners whose injury is chronic and severe but not clearly imminent. In other words, some indigent prisoner claims for necessary medical treatment, even if not sufficient for a finding of imminent danger under § 1915(g), should at least be viewed as involving a fundamentally important right. While equal protection and due process concerns converge in the *Griffin* line of cases, the due process concern, which looks to "the

---

[10] Judge Mansmann correctly noted that the other Circuits to have rejected constitutional challenges to § 1915(g) did so "premised on the absence of an underlying fundamental interest." *Abdul-Akbar*, 239 F.3d at 327 (Mansmann, J., dissenting). As a result, because Appellant Thomas's underlying action does involve the fundamental interest in avoiding arbitrary denial of needed medical care, the other Circuits' decisions are inapposite. An exception was the Sixth Circuit, which, even more in sync with our argument here, "acknowledged that the constitutional right of access to the courts is indeed fundamental" and that a prisoner's access must be "adequate, effective and meaningful." *Wilson*, 148 F.3d at 605 (internal quotation marks omitted). But then the Sixth Circuit found the right unburdened because of the availability of a state court forum where the plaintiff could present his § 1983 claim, a wrinkle that has no analogy here (since a mandamus action is cognizable only in the federal district courts).

essential fairness" of the pre-deprivation proceedings, *M.L.B.*, 519 U.S. at 120, is nowhere more acute than here.  Appellant, with three strikes, could be slowly dying a painful death, and the imminent-danger safety valve might not rescue him. Though he does not allege that his condition is fatal, his due process rights still entitle him an opportunity to be heard on the merits of his claim in light of the ongoing deprivation impacting his serious medical need.

Finally, this Court's decision in *In re Green*, 669 F.2d 779 (D.C. Cir. 1981), necessitates a finding that § 1915(g) violates the due process right of access to the courts.  The Court there declared unconstitutional a district court's requirement that an indigent prisoner plaintiff, in order to file *any* new case, pre-pay the full filing fee and also a $100 deposit against costs he might be assessed.  *Id.* at 784. The nature of Green's lawsuit at issue at that time was not altogether clear, but generally appeared to be focused on "harassment by prison officials" and the allegation that "his frequent transfer among federal prisons" was "an alleged effort to deprive him of access to the courts."  *Id.* at 783.  But Green also had "besieged" the federal courts previously with "repetitive, frivolous and malicious filings" and engaged in "flagrant and serious abuse of the judicial process."  *Id.* at 780.

In overturning the district court's order, this Court said that "a court may impose conditions upon a litigant – even onerous conditions – so long as . . . they are, taken together, *not so burdensome as to deny the litigant meaningful access to*

*the courts*." *Id.* at 786 (emphasis added).  The district court's order failed this test

because it "erect[ed] a potentially prohibitive financial barrier that encompasses all

civil suits including . . . those involving a fundamental constitutional right." *Id.*

The Court added:

> [B]ecause Green cannot comply with the court's order if he is without
> the necessary funds, the order effectively denies Green any and all
> access to the district court.  Even a new, nonfrivolous claim submitted
> in good faith would not be heard if Green could not meet the filing fee
> and cash deposit.  This underscores the general inappropriateness of
> withdrawing the *in forma pauperis* privilege as a means to curtail the
> arrant abuse of that privilege and of the judicial process.  On the one
> hand, Green is totally free to flood the courts with paper provided that
> he pays the going rate:  orders erecting financial barriers are only as
> effective as the litigant is truly impoverished.  On the other hand,
> these restrictions are clumsily overinclusive:  if Green does not have
> the money to file a frivolous claim, he also does not have the money
> to file a legitimate one. . . . We hold, then that the district court's . . .
> order unduly impairs Green's constitutional right of access to the
> courts.

*Id.*

Section 1915(g) has all of the infirmities that the district court's order had in

*Green*.  Where (as here) the prisoner is without means, § 1915(g) acts as a

complete bar to the filing of all new lawsuits, if the prisoner has incurred three

strikes already.  It bars meritorious claims on momentous subjects, just as much as

it bars frivolous claims.  Because § 1915(g) indiscriminately "preclude[s]

[Appellant] from filing a new and legitimate complaint" (such as his current one),

it exacts too "onerous" of a burden and "interfere[s] with [Appellant's] right of access." *Id.* at 787-88.[11]

## CONCLUSION

The Court should grant Appellant's motion for reconsideration of its order dismissing Appellant's appeal for lack of prosecution, permit Appellant to proceed *in forma* pauperis pursuant to the PLRA's installment-payment plan, and set the matter for briefing on the merits of Appellant's appeal.

Respectfully submitted,

/s/ Anthony F. Shelley
Anthony F. Shelley
Sat Nam S. Khalsa
Miller & Chevalier Chartered
655 Fifteenth St. NW, Suite 900
Washington, DC  20005
Telephone: (202) 626-5800
Facsimile: (202) 626-5801
Email: ashelley@milchev.com

August 5, 2013                                                              *Court-Appointed Amicus Curiae*

---

[11] A different aspect of *Green* no longer survives.  In *Hurt v. Social Security Administration*, 544 F.3d 308 (D.C. Cir. 2008), the Court overruled (based on intervening Supreme Court precedent) *Green*'s separate requirement that a court "determine 'separately in every case' whether to allow a litigant to proceed *in forma pauperis*." *Id.* at 310 (quoting *Green*, 669 F.2d at 786).  *Hurt* did not, however, disturb *Green*'s central holding relevant to this case that, "*[a]part from* the necessity of a case-by-case determination of poverty, frivolity or maliciousness," a court may not impose onerous conditions that "deny the litigant meaningful access to the courts."  *Green*, 669 F.2d at 786 (emphasis added).

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

<u>XX</u> this brief contains 11,925 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

___ this brief uses a monospaced typeface and contains [*state the number of lines*] of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because:

<u>XX</u> this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point font in Times New Roman, or

___ this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

 

_____August 5, 2013_____        /s/ Anthony F. Shelley_____
          Date                            Anthony F. Shelley

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2013, I electronically filed the foregoing

**BRIEF OF COURT-APPOINTED *AMICUS CURIAE* ON BEHALF OF**

**APPELLANT** with the Clerk of Court using the CM/ECF System, which will

send notice of such filing to the following registered CM/ECF users:

R. Craig Lawrence
Wynne P. Kelley
U.S. Attorney's Office
555 4th Street, NW
Washington, DC 20530
Email: craig.lawrence@usdoj.gov
Email: wynne.kelly@usdoj.gov

I further certify that on August 5, 2013 I have mailed a true and correct copy

of the foregoing **BRIEF OF COURT-APPOINTED *AMICUS CURIAE* ON**

**BEHALF OF APPELLANT** by First-Class Mail, postage prepaid, to the

following non-CM/ECF participants, addressed as follows:

Keith Thomas, T-67081
California State Prison, Sacramento (SAC)
PO Box 290002
Represa, CA 95671

I also certify that, on August 5, 2013, I will dispatch, within two business

days, by hand-delivery, the requisite EIGHT (8) copies of the **BRIEF OF**

**COURT-APPOINTED *AMICUS CURIAE*, ON BEHALF OF APPELLANT** to

the Clerk of the United States Court of Appeals for the D.C. Circuit.

/s/ Anthony F. Shelley